## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2015, 6:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Robert L. Nicholson
Carson Boxberger LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES

Matthew J. Connelly
Blume, Connelly, Jordan, Stucky
& Lauer, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis L. Floyd and Terence E. Bartholomew, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Scott Piepenbrink and Janet Piepenbrink, <br><br> *Appellees-Plaintiffs* | October 16, 2015 <br><br> Court of Appeals Case No. 02A03-1502-MF-70 <br><br> Appeal from the Allen Circuit Court <br><br> The Honorable Thomas J. Felts, Judge <br><br> Trial Court Cause No. 02C01-1009-MF-778 |

**Crone, Judge.**

# Case Summary

Dennis L. Floyd and Terence E. Bartholomew (collectively "the Owners") appeal the trial court's denial of their motion to determine that judgments are satisfied in favor of Scott Piepenbrink and Janet Piepenbrink ("the Piepenbrinks"). The Piepenbrinks obtained two separate judgments against the Owners and pursued proceedings supplemental to collect those debts. Believing that the judgments have been satisfied, the Owners filed their motion for relief on that ground. Following an evidentiary hearing, the trial court denied the motion. Concluding that the trial court did not abuse its discretion, we affirm its denial of the Owners' motion.

# Facts and Procedural History

The relevant and essentially undisputed facts indicate that in 2004, the Owners purchased a five-story, 55,000-square-foot building located in Fort Wayne ("the Property"). To make the purchase, the Owners executed a note and obtained a mortgage ("the First Mortgage") on the property in favor of Bippus State Bank ("the Bank"). Several years later, in 2007, the Owners executed a promissory note to the Piepenbrinks in the amount of $345,000, with a balloon payment due on July 18, 2008. The note was secured by a second mortgage on the Property in favor of the Piepenbrinks ("the Second Mortgage"). The Second Mortgage contained the following language under the title "Protection of Lender's Rights in Property":

> 9.1    If Borrower fails to perform the covenants and agreements
> contained in this Mortgage, or there is a legal proceeding that

may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including paying items which are Borrower's obligations under this Mortgage or the Note. Lender's actions may include paying any sums secured by a Prior Lien, appearing in court, paying reasonable attorneys' fees, paying hazard insurance premiums, and entering on the Property to make repairs or replacements. *Although Lender may take action under this section 9, Lender is not required to do so*.

9.2    Any amounts paid or disbursed by Lender under this section 9 shall become additional debt of Borrower secured by this Mortgage.

Appellants' App. at 13 (emphasis added).

[3]    On September 3, 2010, the Bank filed a foreclosure action against the Owners. The Piepenbrinks were also named as defendants in the foreclosure action due to their Second Mortgage on the property. The Piepenbrinks filed a cross-claim against the Owners based upon the Owners' default on the promissory note. On March 14, 2011, the Bank obtained a judgment and foreclosure order against the Owners in the amount of $516,800.63. Four days later, the Piepenbrinks purchased the Bank's judgment for $340,000, which included an assignment of the First Mortgage from the Bank to the Piepenbrinks.[1] On April

---

[1] It appears from the record that the actual amount of the judgment purchased by the Piepenbrinks was $516,491.03, which includes the subtraction of $309.00 of costs awarded to the Owners from the original $516,800.63 foreclosure judgment. CCS at 7.

1, 2011, the trial court granted the Piepenbrinks' motion to be substituted in place of the Bank as the plaintiff in the foreclosure action. Then, on May 24, 2011, the trial court entered judgment in favor of the Piepenbrinks on their cross-claim on the default of the promissory note in the amount of $407,651.09 plus interest. At no time did the Piepenbrinks take any action pursuant to section 9 of the Second Mortgage.

[4] On August 9, 2011, a sheriff's sale was conducted on the Property. The Piepenbrinks were the successful (and only) bidders at the sale with a credit bid of $500,000. Fifteen months later, after performing upgrades to the property and engaging in marketing and negotiations for the sale of the Property, the Piepenbrinks sold the Property to a third party for $740,000. After the sale, the Piepenbrinks pursued proceedings supplemental to collect the amounts still owed by the Owners under both judgments.

[5] Then, several years later, pursuant to Indiana Trial Rules 13(M) and 60(B)(7), the Owners filed a motion to determine that judgments are satisfied. Specifically, the Owners argued that they are entitled to a credit for the discount between the Piepenbrinks' credit bid of $500,000 to obtain the Property at the sheriff's sale and the $340,000 paid by the Piepenbrinks to purchase the judgment on the First Mortgage. The Owners further argued that the Piepenbrinks eventually sold the Property for an amount in excess of the sums expended by the Piepenbrinks with regard to both judgments and therefore, no deficiency remains and further amounts sought by the Piepenbrinks would result in a windfall.

The Piepenbrinks responded and argued that there is no legal authority indicating that the Owners are entitled to a credit for any discount at which the Piepenbrinks purchased the judgment on the First Mortgage. The Piepenbrinks noted that they paid more than a nominal sum for the judgment and that they assumed the risk of collecting that debt. The Piepenbrinks also argued that the judgment on the First Mortgage and the judgment on their promissory note are totally separate and that they are entitled to collect the full amount of both judgments. Thus, their $500,000 accepted credit bid for the Property at the sheriff's sale extinguished only that amount of the judgment on the First Mortgage and had no effect regarding their ability to collect the judgment on their promissory note. Additionally, the Piepenbrinks asserted that their eventual sale of the Property to a third party is irrelevant to the amount owed by the Owners on either judgment.

Following a hearing, the trial court entered its order denying the Owners' motion to determine that judgments are satisfied. This appeal ensued. We will provide additional facts in our discussion as necessary.

## Discussion and Decision

The Owners' motion to determine that judgments are satisfied was filed pursuant to Indiana Trial Rules 13(M) and 60(B)(7). Trial Rule 13(M) permits the trial court to order "[s]atisfaction of a judgment or credits theron … upon notice and motion." Trial Rule 60(B)(7) permits a party to file a motion for relief from judgment on the grounds that "the judgment has been satisfied, released, or discharged." To prevail on a Trial Rule 60(B)(7) motion, a party

must affirmatively demonstrate that relief is necessary and just. *Merkor Mgmt. v. McCuan*, 728 N.E.2d 209, 211 (Ind. Ct. App. 2000).

[9] We review a trial court's decision on a Trial Rule 60(B) motion for an abuse of discretion. *Id.* An abuse of discretion occurs where the trial court's ruling is clearly against the logic and effect of the facts and circumstances before the court or if the court erred as a matter of law. *Santelli v. Rahmatullah*, 993 N.E.2d 167, 175 (Ind. 2013). On appeal, we will not reweigh the evidence, and we give the trial court's order substantial deference. *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002), *trans. denied*.

[10] Moreover, the trial court's order here was simply a general denial of the Owners' motion in its entirety. We will affirm a general judgment on any legal theory consistent with the evidence. *Lynn v. Windridge Co-Owners Ass'n*, 830 N.E.2d 950, 954 (Ind. Ct. App. 2005). Upon review, we will presume that the trial court correctly followed the law. *Id.* This is one of the strongest presumptions applicable to our consideration of a case on appeal. *Id.* at 954-55.

## The trial court did not abuse its discretion in denying the Owners' motion to determine that judgments are satisfied.

[11] In support of their claim that the trial court abused its discretion in denying their motion and, in essence, concluding that the two judgments at issue have

not been satisfied,[2] the Owners first argue that the Piepenbrinks are not entitled to enforce the judgment on the First Mortgage at its face value. Specifically, the Owners argue that they are entitled to a credit for the difference between the face value of the judgment ($516,491.03) and the amount actually paid by the Piepenbrinks to purchase the judgment ($340,000). In other words, the Owners believe that they are entitled to the benefit of "the discount" obtained by the Piepenbrinks. Appellants' Br. at 5. We must disagree.

[12] The Owners cite to no relevant authority, and we are unaware of any, that supports the proposition that they are entitled to a credit or that the Piepenbrinks are not entitled to recover the full amount of the judgment purchased in accordance with the rights assigned to them.[3] We acknowledge that the Piepenbrinks had other options and remedies available to them to protect their investment in the Property pursuant to their Second Mortgage. However, the Piepenbrinks did not choose to exercise those options or pursue those remedies and, although they were surely entitled, they were not required to do so. Instead, the Piepenbrinks chose to purchase the judgment on the First Mortgage and obtain an assignment of the Bank's rights. It is well settled that

---

[2] We note that the Owners repeatedly attempt to intermingle the two judgments and the debt owed with respect to each. We decline the invitation to do the same.

[3] The Owners argue that the judgment on the First Mortgage was satisfied when the Piepenbrinks paid the Bank the discounted amount of $340,000. In support of their argument the Owners direct us to *TacCo Falcon Point, Inc. v. Atlantic Limited Partnership XII*, 937 N.E.2d 1212 (Ind. Ct. App. 2010). In *TacCo*, we noted longstanding precedent that payment of a judgment by one of the judgment debtors is a satisfaction of the judgment, notwithstanding that an assignment of the judgment has been made to him or to someone else. *Id.* at 1220-21. The Owners concede that the Piepenbrinks were not judgment debtors here. *TacCo* is factually dissimilar and therefore irrelevant.

an assignee stands in the shoes of the assignor. *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, PC,* 929 N.E.2d 838, 848 (Ind. Ct. App. 2010), *trans. denied.* As the Piepenbrinks argued to the trial court, they paid more than a nominal sum for this assignment of rights, and they assumed the risks associated with collecting the judgment. As purchasers of the judgment and assignees of the Bank's rights, the Piepenbrinks are entitled to enforce the judgment at its face value.

[13] The Piepenbrinks successfully submitted a credit bid of $500,000 to obtain the Property at the sheriff's sale. As a general matter, the payment of a bid at a sheriff's sale sufficient to satisfy the judgment extinguishes the judgment. *Titan Loan Inv. Fund, L.P. v. Marion Hotel Partners, LLC,* 891 N.E.2d 74, 76 (Ind. Ct. App. 2008), *trans. denied.* "This is true even where, as here, the judgment creditor 'was the purchaser at his own sale.'" *Id.* (quoting *Boos v. Morgan*, 130 Ind. 305, 30 N.E.141, 143 (1892)). Here, the Piepenbrinks' credit bid satisfied $500,000 of the $516,491.03 judgment. Thus, the judgment on the First Mortgage has not yet been extinguished, and a deficiency balance remains.

[14] We note that although the law presumes that a sheriff's sale provides a decent method by which value can be fixed, a sale may be set aside, or a request for a deficiency judgment denied, if it appears that the results of the sale are such that entry of a deficiency judgment would be shocking to the court's sense of "justice and right." *Arnold v. Melvin R. Hall*, 496 N.E.2d 63, 65 (Ind. 1986) (citation omitted). The burden falls upon the defaulter to demonstrate such inequity. *Id.* The Owners offered no legitimate evidence to the trial court as to the value

of the Property at the time of the sheriff's sale, and a credit bid of $500,000 on a $516,491.03 mortgage judgment cannot be described as shocking to the conscience. The Owners have not met their burden to establish that the price paid for the Property at the sheriff's sale was inadequate such that the request for a deficiency judgment should be denied.

[15] As for the Piepenbrinks' judgment on their promissory note, the Owners presented no evidence to the trial court to indicate that they have satisfied any portion of that debt. In sum, a deficiency balance remains on the judgment on the First Mortgage and the full balance remains on the judgment on the promissory note. Contrary to the Owners' assertions, it is of no moment that the Property was eventually sold by the Piepenbrinks to a third party and that the Piepenbrinks have, in the Owners' opinion, "been made whole" in a monetary sense. Appellants' Br. at 9 n.1. The fact remains that the Piepenbrinks obtained two judgments against the Owners, and they are entitled to pursue proceedings supplemental until those judgments are fully satisfied. Accordingly, the trial court did not abuse its discretion in denying the Owners' motion to determine that judgments are satisfied. The trial court's order is affirmed.

[16] Affirmed.

May, J., and Bradford, J., concur.